NUMBER 13-05-608-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CHARLES MASON BOGLE, Appellant,


v.



DIANNE LYNN BOGLE, Appellee.

 




On appeal from the 130th District Court of Matagorda County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez



 

 Charles Mason Bogle appeals from a divorce decree which ended his twenty-year
marriage to Dianne Lynn Bogle and divided the community property. In his sole issue on
appeal, Charles asserts the trial court abused its discretion in dividing the marital estate
as a result of assessing improper values to certain assets. We affirm.

I. Applicable Law

 In reviewing the trial court's valuation of a particular asset, we must first consider
whether the trial court had sufficient evidence to support its valuation. (1) If we determine the
trial court's valuation was erroneous, we must then determine whether the trial court
abused its discretion in dividing the estate. (2) The trial court shall order a division of the
community estate in a manner which the court deems just and right, having due regard for
the rights of each party. (3) A trial court has broad discretion in making the division. (4) A
division of the community estate need not be equal, and the trial court may weigh many
factors in reaching that decision. (5) In exercising its discretion, the trial court may consider
the spouses' capacities and abilities, the benefits which the party not at fault would have
derived from continuation of the marriage, business opportunities, education, relative
physical conditions, relative financial conditions and obligations, disparity in ages, the size
of separate estates, and the nature of the property. (6)

 It is appellant's burden to establish that the trial court abused its discretion. (7) A court
is held to have abused its discretion when it acts without reference to any guiding rules or
principles. (8) As an appellate court, we will indulge every reasonable presumption in favor
of the proper exercise of discretion by the trial court. (9)II. Analysis

 On April 4, 2005, the trial court held a final hearing on the divorce for the purpose
of resolving a dispute between Charles and Dianne over a division of property and division
of debt. At the hearing, both parties provided testimony and evidence regarding the values
of their homestead and Charles's printing business. The homestead was awarded to
Dianne and the business to Charles. Charles contests the trial court's valuations of these
properties on appeal. (10) Though the court did announce the values afforded to specific
properties and to whom the properties were awarded to, the court did not make findings
of fact or conclusions of law, nor was it requested to do so. (11)

A. Property Valuations

 According to Dianne, the homestead was worth $66,160; this was the same value
provided by the Matagorda County Appraisal District. Charles, on the other hand,
appraised the homestead at $111,000. Though Charles attempted to support this figure
with a report prepared by a real estate appraiser, the report was objected to and not
allowed into evidence. When several values are in evidence regarding the same piece of
property, the court's finding on value must be within the range of values in evidence. (12) In
the instant case, the trial court valued the homestead at $100,000; this value is within the
range of values provided by Charles and Dianne. We thus see no merit to Charles's
complaint that the trial court erred by failing to place a higher value on the homestead, (13)
especially since Charles's appraisal was not supported by any evidence affirmatively
showing that the court's valuation constituted an abuse of discretion.

 Charles produced printing plates for stationery through the printing business he
operated out of the homestead. Dianne valued the business at $18,000; she presented
no evidence to support this valuation. Charles contended that the business was only worth
the cost of the business equipment, which he appraised at $3,000. The Bogles' income
tax returns, which were submitted into evidence, revealed that the business had produced
a gross income of $28,374 and $18,150 in 2002 and 2003, respectively. The tax returns
also showed, however, that the business claimed no net profit in 2002 and a net profit of
$7,841 in 2003. Charles also testified that the business provided him with an income of
approximately $1,500 to $2,000 a month.

 The trial court valued the business at $18,000, equipment included. The record
does not reveal whether the court derived this figure from Dianne's testimony, the gross
incomes stated on the 2002 and 2003 tax returns, or Charles's testimony regarding his
monthly income. We note that basing a valuation on Dianne's testimony alone would be
error because Dianne never revealed that she helped operate the business, that she had
adequate knowledge of the business' accounts receivable and equipment, or that she knew
the value of similar businesses. (14) Accordingly, it was never proven that Dianne's
knowledge would be competent evidence to predicate a valuation on. Nevertheless, while
indulging every reasonable presumption in favor of the proper exercise of discretion by the
trial court, (15) we conclude that the court's valuation derived from the income tax returns
and/or Charles's testimony as to the monthly income he received from the business. 
Though Charles, as the operator of the business for twenty years, could competently
assess the value of the business, we do not believe the court erred in rejecting his $3,000
valuation because the final decree awarded the community interest in the business, rather
than specific assets (i.e., the business equipment).

 While we find that the court was free to make a valuation based on the income tax
returns and Charles's testimony regarding monthly income, we do recognize the legitimacy
of Charles's concern on appeal that the court may have overvalued the business in light
of the net profits stated on the tax returns. We note, however, that it is not enough for
Charles to merely point out inaccuracies in the court's findings. Charles must not only
present evidence establishing the true value of the property, but also prove that the
ultimate division, as reappraised, remained manifestly inequitable, thus warranting
reversal. (16)

B. Property Division

 The total value of the community property divided by the court amounted to
$141,770, of which $104,245 was awarded to Dianne and $37,525 was awarded to
Charles. The trial court further ordered, however, that Dianne pay Charles $12,000 in
cash, which we conclude, from a review of the record, could likely only be paid through the
community property assets awarded to Dianne. As a result, we see the overall monetary
division as being $92,245 for Dianne and $49,525 for Charles, or approximately 65% for
Dianne and 35% for Charles. (17)

 As fact finder, the trial court is the sole judge of the credibility of witnesses in a
bench trial. (18) As such, the court in the instant case was free to believe Dianne's testimony
that (1) her only source of income is $350 a month, which she gets from renting a trailer
house owned by her father; (2) she owes her father over $10,000, a debt she accumulated
by borrowing money to pay for community debt; (3) she did not graduate from high school;
(4) she did not work during her twenty-year marriage to Charles; and (5) Charles resisted
her attempts to acquire employment during their marriage. This testimony--along with
Charles's testimony that (1) Dianne suffers from cataracts and has needed operations to
maintain her eyesight, (2) that he earns $1,500 to $2,000 a month from his printing
business, and (3) that he earns $454 a month from payments made to satisfy the $9,084
still owed to him from a property he sold--justifies the court's decision to award Dianne a
greater percentage of the community estate. (19)

 While we believe that the court could rightfully exercise its discretion in valuing
Charles's business at more than $3,000, we do recognize that had the court actually
afforded the business that value, Charles's percentage of the community estate would be
27%--an 8% decrease from what the trial court intended to afford Charles. (20) Whether or
not a valuation error constitutes an abuse of discretion is something that must be
determined on a case by case basis. (21) In the instant case, we find that giving Dianne, at
most, 73% of the estate rather than the 65% intended, does not constitute an abuse of
discretion in dividing the property in light of the testimony discussed herein. (22)
 Accordingly,
we overrule Charles's sole issue on appeal.

III. Conclusion

 We affirm the trial court's judgment.





 

 LINDA REYNA YAÑEZ,

 Justice






Memorandum opinion delivered and filed 

this the 24th day of August, 2007.




1. Young v. Young, 168 S.W.3d 276, 281 (Tex. App.-Dallas 2005, no pet.).
2. Id.
3. Tex. Fam. Code Ann. § 7.001 (Vernon 2006).
4. McKnight v. McKnight, 543 S.W.2d 863, 866 (Tex. 1976); Farley v. Farley, 930 S.W.2d 208, 211
(Tex. App.-Eastland 1996, no writ).
5. Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981).
6. Id. at 698-99.
7. Farley, 930 S.W.2d at 211.
8. Murff, 615 S.W.2d at 698.
9. Farley, 930 S.W.2d at 211.
10. Though additional community property was discussed at the hearing, and was ultimately valued and
divided by the trial court, the valuation of this additional property is not contested on appeal.
11. We note that in a bench trial, where no findings of fact or conclusions of law are filed or requested,
it will be implied that the trial court made all the necessary findings to support its judgment. Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).
12. Mata v. Mata, 710 S.W.2d 756, 758 (Tex. App.-Corpus Christi 1986, no writ).
13. We note that the court's valuation of the homestead was only $11,000 less than that endorsed by
Charles, and $33,840 more than that endorsed by Dianne.
14. See Laprade v. Laprade, 784 S.W.2d 490, 492 (Tex. App.-Fort Worth 1990, pet. denied).
15. Farley, 930 S.W.2d at 211.
16. Forgason v. Forgason, 911 S.W.2d 893, 896 (Tex. App.-Amarillo 1995, writ denied).
17. We utilize the trial court's $18,000 valuation of the business in arriving at these figures.
18. Murff, 615 S.W.2d at 700.
19. Id. at 699 (holding that a trial court, in making a "just and right" division of the property, may properly
consider such factors as the spouses' capacities and abilities, business opportunities, education, relative
physical conditions, and relative financial condition and obligations).
20. With the business valued at $3,000, the total community estate would be valued at $126,770, of
which a total of $34,525 would go to Charles after accounting for the $12,000 in cash paid to him by Dianne.
21. To illustrate this very point, the El Paso Court of Appeals offered the following hypothetical:


 Suppose the parties dispute the value of Husband's business which is operated as a sole
proprietorship. Wife contends it has a value of $30,000 while Husband values it at $10,000. 
For purposes of this example, we will assume that Wife's valuation expert improperly
includes personal goodwill. We will also assume that the trial court erroneously overrules
Husband's objection and makes a specific fact finding that the business has a value of
$30,000. On appeal, Husband contends that the trial court erred in admitting Wife's expert's
testimony, and had it been properly excluded, there was no evidence to support a valuation
finding of $30,000. While an appellate court would likely agree, that is merely the first hurdle. 
Husband must still demonstrate that the trial court abused its discretion in dividing the
community estate. Even if the evidence is insufficient to support the court's value of $30,000,
that valuation error may not constitute an abuse of discretion in the ultimate distribution of a
$300,000 estate [the error representing ten percent of the total community estate], but it may
well constitute an abuse of discretion in the division of a $100,000 estate [the error
representing nearly a third of the community estate], depending upon the equities justifying
a disproportionate division.


Lindsey v. Lindsey, 965 S.W.2d 589, 593 n.3 (Tex. App.-El Paso 1998, no pet.).
22. See Thomas v. Thomas, 603 S.W.2d 356, 358 (Tex. Civ. App.-Houston [14th Dist.] 1980, writ
dism'd) (finding that even if values assigned to property were low, so that property given wife actually
constituted 70 rather than 60 percent of estate, court did not abuse discretion in dividing property).